UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| DAVONNA ROBERTS, as Administrator of the Estate of Daevon M. Roberts, Deceased, and TONENYSHA BRAGG-KAMPHEY, as Natural Guardian of Tre'Ceyon Purdue, a Minor, Plaintiffs, <br><br> v. <br><br> CITY OF BUFFALO, Officer RONALD J. AMMERMAN, Officer J. CRAWFORD, and Officer John/Jane Does #1-100, <br><br> Defendants. | COMPLAINT <br><br> Civil Action No.: <u>1:26-cv-00828</u> <br><br> JURY TRIAL DEMANDED |

Plaintiffs demand a jury to try all claims triable by a jury.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3). This Court also has supplemental jurisdiction pursuant to 28 U.S.C. §1367 to adjudicate Plaintiffs' claims under state law.

2. The Western District of New York is an appropriate venue under 28 U.S.C. §1391 (b) (2) because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## THE PARTIES

3. Plaintiff DAVONNA ROBERTS is the duly appointed Administrator of the Estate of Daevon M. Roberts, appointed by the Surrogate's Court of Erie County on May 16, 2025, (File No. 2025-28) and brings this action on behalf of the Estate and the statutory distributees of the deceased pursuant to Estates, Powers and Trusts Law § 5-4.1 and other applicable law.

4. Plaintiff TONENYSHA BRAGG-KAMPHEY is the cousin of the deceased and the natural guardian of minor child TRE' CEYON PURDUE, who was present at the time of the incident and suffered emotional and psychological injuries.

5. THE CITY OF BUFFALO ("DEFENDANT CITY") is a municipal corporation organized under the laws of the State of New York. At all relevant times, DEFENDANT CITY, acting through the DEFENDANT BUFFALO POLICE DEPARTMENT ("BPD"), was responsible for the policy, practice, supervision, implementation, and conduct of all BPD matters and was responsible for the appointment, training, supervision, discipline, retention, and conduct of all BPD personnel.

6. In addition, at all relevant times, DEFENDANT CITY was responsible for enforcing the rules of the BPD and for ensuring that BPD personnel obey all federal and state laws.

7. BPD Officer Ronald J. Ammerman ("DEFENDANT AMMERMAN") was, at all relevant times, a police officer of the BPD, and as such was acting in the capacity of an agent, servant, and employee of DEFENDANT CITY. At all times relevant hereto, DEFENDANT AMMERMAN was under the command of the BPD. DEFENDANT AMMERMAN is also sued in his individual capacity.

8. BPD Officer J. Crawford ("DEFENDANT CRAWFORD") was, at all relevant times, a police officer of the BPD, and as such was acting in the capacity of an agent, servant, and employee of DEFENDANT CITY. DEFENDANT CRAWFORD is also sued in his individual capacity.

9. All other individual Defendants ("DEFENDANT OFFICERS") including John/Jane Does #1-100, individuals whose names are currently unknown to Plaintiffs, are employees of the BPD and are sued in their individual capacities.

10. DEFENDANT CITY, BPD, DEFENDANT AMMERMAN, DEFENDANT CRAWFORD, and DEFENDANT OFFICERS are collectively referred to as "DEFENDANTS" as applicable herein.

11. At all times herein mentioned, DEFENDANTS were acting under color of state law, to wit, under color of the statutes, ordinances, regulations, policies, customs, and usages of the City of Buffalo and State of New York.

## NOTICE OF CLAIM

12. Within 90 days of the incident, on October 8, 2024, Plaintiffs filed a Notice of Claim ("Notice") with Corporation Counsel for DEFENDANT CITY.

13. Plaintiffs' counsel made repeated good-faith efforts to schedule and appear for a § 50-h hearing, including sending multiple written communications and telephone calls to the City's Law Department. The City failed to schedule the hearing. Plaintiffs have satisfied their obligations under General Municipal Law § 50-h.

14. The matter has not been settled or otherwise disposed of.

## FACTUAL ALLEGATIONS

15. On or about July 10, 2024, Decedent Daevon M. Roberts ("Mr. Roberts"), a 26-year-old Black man residing in Atlanta, Georgia, was lawfully driving his sister's vehicle near the intersection of Kensington and Poultney Avenues in Buffalo, New York.

16. Mr. Roberts was in Buffalo to support his family following the recent passing of a close relative and had extended his stay to assist his cousin Tonenysha Bragg-Kamphey with caregiving responsibilities, including caring for her six-year-old son, Tre'Ceyon Purdue, who was seated in the front passenger seat on the night of the incident.

17. DEFENDANT AMMERMAN and DEFENDANT CRAWFORD initiated a traffic stop of Mr. Roberts' vehicle allegedly for tinted windows and speeding — minor infractions that did not give rise to reasonable suspicion of any criminal activity.

18. Upon approach, body-worn camera footage shows that Mr. Roberts was calm, respectful, and fully cooperative. He provided valid digital identification and spoke to the officers in a non-confrontational manner.

19. At no point did Mr. Roberts make any threats, sudden movements, or attempts to harm the officers. He was unarmed and posed no immediate danger to any person.

20. Despite this, DEFENDANT AMMERMAN escalated the encounter. Without justification, he ordered Mr. Roberts to exit the vehicle.

21. When Mr. Roberts began to slowly drive forward in an attempt to leave the scene, DEFENDANT AMMERMAN clung onto the moving vehicle instead of stepping away to ensure his own safety and the safety of the child passenger.

22. Within seconds, DEFENDANT AMMERMAN discharged his firearm, firing five rounds at close range into the driver's compartment of the vehicle, striking Mr. Roberts multiple times. Mr. Roberts died at the scene. He was only a few blocks from his sister's home.

23. The use of deadly force by DEFENDANT AMMERMAN was objectively unreasonable. Mr. Roberts was unarmed, posed no threat to any person, and was slowly driving away in a residential area. DEFENDANT AMMERMAN created the very danger he claimed to face by clinging to the vehicle rather than stepping aside. No reasonable officer in the same circumstances would have resorted to deadly force.

24. Upon information and belief, on Mother's Day, May 10, 2020 — weeks before the murder of George Floyd brought national attention to police violence against Black Americans — DEFENDANT AMMERMAN violently beat Quentin Suttles, a Black man, during a traffic stop in Buffalo, nearly killing him. That incident was captured on camera and broadcast nationally on CNN and covered extensively by local news outlets throughout Buffalo and Western New York. The incident was widely known and discussed throughout the Buffalo community. Mr. Roberts and his family were aware of and had discussed DEFENDANT AMMERMAN's conduct toward Mr. Suttles. Mr. Roberts' decision to slowly drive away rather than exit the vehicle was a reasonable response to a well-founded fear for his life in the face of a known dangerous officer.

25. DEFENDANT CRAWFORD, who had followed the stop in a separate police vehicle as standard protocol dictates, remained in his car throughout the encounter. Had DEFENDANT AMMERMAN done the same — following Mr. Roberts' slowly moving vehicle rather than clinging to it — Mr. Roberts would be alive today.

26. Tre'Ceyon Purdue, the six-year-old child seated next to Mr. Roberts, directly witnessed the shooting and the violent death of his caregiver. The incident left him traumatized and in need of ongoing psychiatric and emotional support.

## FIRST CAUSE OF ACTION
### 42 U.S.C. § 1983 (Fourth Amendment – Excessive Force) (Brought by Plaintiff Davonna Roberts as Administrator of the Estate)

27. All previous paragraphs are incorporated herein by reference as though fully set forth.

28. Plaintiff Davonna Roberts, as Administrator of the Estate of Daevon M. Roberts, brings this claim under 42 U.S.C. § 1983 for violation of the Fourth Amendment of the U.S. Constitution.

29. The reasonableness of force under the Fourth Amendment is evaluated by considering whether the suspect posed an immediate threat to the safety of officers or others,

whether the suspect was actively resisting arrest, and whether the suspect was attempting to evade arrest by flight. *Graham v. Connor*, 490 U.S. 386 (1989). Mr. Roberts was unarmed, made no threatening movements, and was slowly driving away in a residential area. He posed no immediate threat, was not actively resisting, and was not evading arrest — he was attempting to leave a traffic stop out of a reasonable fear for his life.

30. DEFENDANT AMMERMAN created the very danger he claimed to face. By clinging to Mr. Roberts' slowly moving vehicle rather than stepping aside, DEFENDANT AMMERMAN manufactured a purported justification for the use of deadly force. An officer may not manufacture an exigency to justify lethal force. DEFENDANT AMMERMAN's use of deadly force against Mr. Roberts was therefore not reasonable under the circumstances and was excessive.

31. DEFENDANT CRAWFORD, who remained in his vehicle throughout, did not face any threat and had a duty to intervene to prevent DEFENDANT AMMERMAN's use of excessive force but failed to do so.

32. Wherefore, as a direct and proximate result of the actions of Defendants, Plaintiffs have suffered extensive and continuing damages, including loss of life, emotional trauma, and financial harm.

## SECOND CAUSE OF ACTION
### 42 U.S.C. § 1983 (Monell) – City of Buffalo, Buffalo Police Department, Defendant AMMERMAN and Defendant CRAWFORD
### (Brought by Plaintiff Davonna Roberts as Administrator of the Estate)

33. All previous paragraphs are incorporated herein by reference as though fully set forth.

34. Municipal bodies are liable for constitutional violations under 42 U.S.C. § 1983 when the execution of an official policy or custom deprives an individual of rights protected under the Constitution. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694-95 (1978).

35. Municipal liability also exists where a city fails to properly train, supervise, and discipline its employees, amounting to deliberate indifference to constitutional rights. *City of Canton v. Harris*, 489 U.S. 378 (1989).

36. At all times relevant, Defendants had a duty to properly train, supervise, and discipline their employees and agents.

37. Defendants breached that duty, in part, by:

   a. Improperly training, authorizing, encouraging, or directing officers on proper use of force;

   b. Failing to investigate allegations of excessive force;

   c. Failing to discipline officers for violations of policy related to excessive force; and

   d. Tacitly or overtly sanctioning a policy, pattern of practice, or custom of condoned misconduct, as evidenced by the conduct of DEFENDANT AMMERMAN and DEFENDANT CRAWFORD and the failure to train, supervise, investigate, and discipline the officers involved in this incident, amounting to deliberate indifference to Plaintiffs' constitutional rights.

38. The existence of this policy, pattern, or custom is further demonstrated by the fact that on Mother's Day, May 10, 2020, DEFENDANT AMMERMAN violently beat Quentin Suttles, a Black man, during a traffic stop, nearly killing him. That incident was captured on camera and broadcast nationally on CNN and covered extensively by local news outlets throughout Buffalo and Western New York. The City of Buffalo and the Buffalo Police Department took no meaningful disciplinary action in response. By retaining and continuing to deploy DEFENDANT AMMERMAN without corrective action even after that widely publicized incident, the City ratified his conduct and signaled to its officers that such violence would be tolerated.

39. This unconstitutional conduct by officers was carried out pursuant to a policy, pattern of practice, or custom, whether formal or informal, which violates constitutional rights.

40. Defendants failed to take sufficient remedial action to end this policy, pattern of practice, or custom within the BPD.

41. The condoning of misconduct and the failure to end this policy, pattern of practice, or custom was a proximate cause of the injuries suffered by Plaintiffs.

42. Wherefore, as a direct and proximate result of the actions of the Defendants, Plaintiffs have suffered extensive and continuing damages, including loss of life, emotional trauma, and financial harm.

## THIRD CAUSE OF ACTION
### 42 U.S.C. § 1983 – Failure to Terminate or Discipline Dangerous Officers (City of Buffalo and Buffalo Police Department) (Brought by Plaintiff Davonna Roberts as Administrator of the Estate)

43. All previous paragraphs are incorporated herein by reference as though fully set forth.

44. Plaintiffs bring this claim under 42 U.S.C. § 1983 as an additional and alternative theory of municipal liability. The City of Buffalo and the Buffalo Police Department deprived Mr. Roberts of his rights under the Fourth and Fourteenth Amendments by maintaining a pattern and practice of failing to terminate or discipline officers who demonstrate serious misconduct, amounting to deliberate indifference to the constitutional rights of the public.

45. The City of Buffalo and the Buffalo Police Department had actual notice of DEFENDANT AMMERMAN's dangerous propensity for violence. On Mother's Day, May 10, 2020, DEFENDANT AMMERMAN violently beat Quentin Suttles, a Black man, during a traffic stop, nearly killing him. That incident was captured on camera, broadcast nationally on CNN, and covered extensively by local news outlets throughout Buffalo and Western New York. The City cannot claim ignorance of conduct that was nationally and locally publicized and occurred over four years before the killing of Mr. Roberts.

46. Despite this actual notice, the City of Buffalo and the Buffalo Police Department took no meaningful disciplinary action against DEFENDANT AMMERMAN, allowed him to remain on active duty, and permitted him to continue conducting traffic stops unsupervised.

47. Upon information and belief, DEFENDANT AMMERMAN was also the subject of additional citizen complaints and internal affairs investigations prior to July 10, 2024, only a small fraction of which resulted in meaningful discipline, retraining, or removal.

48. On July 10, 2024, DEFENDANT AMMERMAN's conduct of clinging to the vehicle of a lawfully driving, unarmed Black man and firing five close-range rounds while a child was present is the direct and foreseeable result of the City's failure to act on its knowledge of his dangerous conduct.

49. Notwithstanding the death of Mr. Roberts, DEFENDANT AMMERMAN continues to serve as a Buffalo Police Department officer to this day. The City's continued retention of DEFENDANT AMMERMAN following both the Quentin Suttles incident and the killing of Mr. Roberts constitutes an ongoing deliberate indifference to the constitutional rights of the public.

50. Wherefore, as a direct and proximate result of the actions of the Defendants, Plaintiffs have suffered extensive and continuing damages, including loss of life, emotional trauma, and financial harm.

## FOURTH CAUSE OF ACTION
### 42 U.S.C. § 1983 – Equal Protection (Fourteenth Amendment) – Racially Biased Policing (City of Buffalo and Buffalo Police Department)
### (Brought by Plaintiff Davonna Roberts as Administrator of the Estate)

51. All previous paragraphs are incorporated herein by reference as though fully set forth.

52. Plaintiffs bring this claim under 42 U.S.C. § 1983 for violation of the Equal Protection Clause of the Fourteenth Amendment. The City of Buffalo and the Buffalo Police Department have maintained a policy, pattern, or practice of racially biased policing that disproportionately targets Black residents, including through pretextual traffic stops, excessive force, and failure to discipline officers who engage in racially motivated misconduct.

53. DEFENDANT AMMERMAN's history of violent conduct is directed specifically at Black men during traffic stops. The stop of Mr. Roberts — a Black man driving in a residential Buffalo neighbourhood — and the use of deadly force against him is consistent with this pattern. Upon information and belief, DEFENDANT AMMERMAN has not used comparable force against white motorists in similar circumstances.

54. The Buffalo Police Department has a longstanding culture in which racial bias and discriminatory conduct by officers were tolerated and rarely disciplined, allowing officers like DEFENDANT AMMERMAN to act with impunity against Black residents.

55. Despite repeated complaints and internal reviews, the Department has failed to implement meaningful training, supervision, or corrective measures to prevent racially biased policing.

56. The City of Buffalo and the Buffalo Police Department knew or should have known of these patterns of racial bias and failed to act, thereby creating conditions that directly contributed to the killing of Mr. Roberts.

57. Wherefore, as a direct and proximate result of the actions of the Defendants, Plaintiffs have suffered extensive and continuing damages, including loss of life, emotional trauma, and financial harm.

## FIFTH CAUSE OF ACTION
### 42 U.S.C. § 1983 (Fourth Amendment – Duty to Intervene)
### (Brought by Plaintiff Davonna Roberts as Administrator of the Estate)

58. All previous paragraphs are incorporated herein by reference as though fully set forth.

59. Plaintiffs bring this claim under 42 U.S.C. § 1983 for violation of the Fourth Amendment of the U.S. Constitution. An officer who observes another officer using excessive force and has a realistic opportunity to intervene but fails to do so is liable under § 1983.

60. DEFENDANT CRAWFORD was present throughout the entire encounter. He followed the traffic stop in a separate police vehicle, was positioned at the scene, and directly observed DEFENDANT AMMERMAN's conduct from beginning to end.

61. DEFENDANT CRAWFORD observed DEFENDANT AMMERMAN escalate the encounter without justification, order Mr. Roberts out of the vehicle, and then cling to the moving vehicle rather than stepping aside. Each of these moments presented a realistic opportunity for DEFENDANT CRAWFORD to intervene — by calling out to DEFENDANT AMMERMAN to stand down, by physically stepping in, by radioing for a supervisor, or by using his vehicle to safely intercept Mr. Roberts' slowly moving car without resort to deadly force.

62. DEFENDANT CRAWFORD took none of these steps. He remained in his vehicle and watched as DEFENDANT AMMERMAN fired five rounds at close range into the car of an unarmed man with a six-year-old child in the passenger seat.

63. DEFENDANT CRAWFORD's failure to intervene was not a split-second decision — the encounter escalated over a period of time during which he had ample opportunity to act. His inaction was a proximate cause of Mr. Roberts' death.

64. Wherefore, as a direct and proximate result of DEFENDANT CRAWFORD's failure to intervene, Plaintiffs have suffered extensive and continuing damages, including loss of life, emotional trauma, and financial harm.

## SIXTH CAUSE OF ACTION
### Wrongful Death – N.Y. EPTL § 5-4.1
### (Brought by Plaintiff Davonna Roberts as Administrator of the Estate)

65. All previous paragraphs are incorporated herein by reference as though fully set forth.

66. Plaintiff Davonna Roberts brings this claim as Administrator of the Estate of Daevon M. Roberts pursuant to New York Estates, Powers and Trusts Law § 5-4.1 on behalf of the Estate and the statutory distributees of the deceased.

67. As a direct and proximate result of the Defendants' wrongful conduct, Daevon M. Roberts was killed on July 10, 2024. His death was caused by the negligent, reckless, and intentional acts of Defendants as set forth herein.

68. As a result of Mr. Roberts' wrongful death, his distributees have suffered pecuniary losses including but not limited to loss of financial support, loss of services, loss of guidance and companionship, and funeral, medical, and burial expenses.

69. Wherefore, as a direct and proximate result of the actions of Defendants, the Estate has suffered extensive damages.

## SEVENTH CAUSE OF ACTION
### Survival Action – Conscious Pain and Suffering
### (Brought by Plaintiff Davonna Roberts as Administrator of the Estate)

70. All previous paragraphs are incorporated herein by reference as though fully set forth.

71. Plaintiff Davonna Roberts brings this claim as Administrator of the Estate of Daevon M.
Roberts pursuant to New York law.

72. Prior to his death, Daevon M. Roberts experienced conscious pain and suffering as a result of being shot five times at close range by DEFENDANT AMMERMAN. Mr. Roberts was conscious and aware of his injuries in the moments before his death.

73. As a result of Defendants' wrongful conduct, the Estate is entitled to recover damages for Mr. Roberts' conscious pain and suffering prior to death.

74. Wherefore, as a direct and proximate result of the actions of Defendants, the Estate has suffered extensive damages.

## EIGHTH CAUSE OF ACTION
### Negligent Infliction of Emotional Distress
### (Brought by Plaintiff Tonenysha Bragg-Kamphey, Individually and as Natural Guardian of Tre'Ceyon Purdue)

75. All previous paragraphs are incorporated herein by reference as though fully set forth.

76. Plaintiff Tonenysha Bragg-Kamphey brings this claim individually and as natural guardian of Tre'Ceyon Purdue, a minor.

77. Tre'Ceyon Purdue, age six, was seated in the front passenger seat of the vehicle at the time of the shooting. He was in the zone of danger and directly witnessed DEFENDANT AMMERMAN fire five rounds into the vehicle, killing his caregiver Daevon M. Roberts at close range. Under New York law, a bystander who is in the zone of danger and witnesses injury to a close family member may recover for negligent infliction of emotional distress.

78. As a direct result of witnessing the violent death of Mr. Roberts, Tre'Ceyon Purdue has suffered and continues to suffer severe emotional distress, psychological trauma, and is in need of ongoing psychiatric care and treatment.

79. Tonenysha Bragg-Kamphey, as the cousin of Mr. Roberts and the caregiver who entrusted her son to his care, has independently suffered severe emotional distress, mental anguish, and loss of familial support as a direct result of Defendants' conduct.

80. Wherefore, as a direct and proximate result of the actions of Defendants, Tonenysha Bragg-Kamphey and Tre'Ceyon Purdue have suffered extensive and continuing damages.

## NINTH CAUSE OF ACTION
### Negligent Hiring, Negligent Retention, and Negligent Supervision (Brought by All Plaintiffs against City of Buffalo and Buffalo Police Department)

81. All previous paragraphs are incorporated herein by reference as though fully set forth.

82. All individual Defendants named in this Complaint are employees, deputies, and/or agents of the City of Buffalo and the Buffalo Police Department and were acting within the scope of their employment at all relevant times.

83. Defendant City of Buffalo and Defendant BPD owed a duty of care to Plaintiffs and the public to exercise reasonable care in the hiring, retention, and supervision of their employees.

84. Defendant City of Buffalo and Defendant BPD knew or should have known that DEFENDANT AMMERMAN had a dangerous character based on prior complaints, the Quentin Suttles incident, excessive force violations, and background evaluations including psychological assessments. Notwithstanding this knowledge, Defendants retained DEFENDANT AMMERMAN, failed to retrain or supervise him, and permitted him to continue conducting traffic stops.

85. Defendant City of Buffalo and Defendant BPD similarly failed to adequately supervise DEFENDANT CRAWFORD and other officers to ensure they would fulfill their duty to intervene when witnessing excessive force by fellow officers.

86. Defendant City of Buffalo and Defendant BPD breached their duty of care by failing to properly hire, retain, supervise, and discipline DEFENDANT AMMERMAN and DEFENDANT CRAWFORD, directly causing the death of Mr. Roberts and the emotional injuries suffered by Tonenysha Bragg-Kamphey and Tre'Ceyon Purdue.

87. Wherefore, as a direct and proximate result of the actions of Defendants, all Plaintiffs have suffered extensive and continuing damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray that this Court:

88. Enter judgment in favor of Plaintiffs and against Defendants;

89. Enter an Order declaring the conduct of Defendants unconstitutional;

90. Enter a permanent injunction requiring Defendant City of Buffalo and the Buffalo Police Department to identify all officers responsible for Plaintiffs' damages and take steps to discipline those officers and train all other officers to prevent future misconduct;

91. Award compensatory damages to the Estate of Daevon M. Roberts for wrongful death, including but not limited to funeral, medical, and burial expenses; loss of financial support; lost wages and future earnings; and loss of companionship, guidance, and services;

92. Award compensatory damages to the Estate for Mr. Roberts' conscious pain and suffering prior to death;

93. Award compensatory damages to Tonenysha Bragg-Kamphey for her emotional distress, mental anguish, and loss of familial support;

94.    Award compensatory damages for the present and future psychiatric care, emotional harm, and loss of familial support suffered by Tre'Ceyon Purdue;

95.    Award punitive damages against the individual Defendants to deter similar wrongful conduct in the future;

96.    Award costs of suit and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 and other applicable law; and

97.    Such other and further relief as the Court deems just and proper.

Dated: April 23, 2026
Buffalo, New York

/s/   Prathima   Reddy
Prathima Reddy, Esq.
The Reddy Law Firm
455 Linwood Avenue,
3rd Floor,
Buffalo, NY, 14209
preddy@thereddylaw.com
eserve@thereddylaw.com
Phone: (646) 468-4257
Fax: (510) 217-3541